# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>ANGELO ASHLEY,<br><br>     Defendant. | 3:18-CR-30113-RAL<br><br>**REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS** |

Law enforcement received a report that Angelo Ashley sexually abused an autistic female child in the Cherry Creek community of the Cheyenne River Indian Reservation. Two federal agents interviewed him in a vehicle parked outside his house. In a pretrial motion, he seeks to suppress his incriminating statements to the agents, arguing he was in custody and subject to the edicts of *Miranda*.[1] Because Ashley's interview was not custodial – within the meaning of *Miranda* – the Court recommends that the suppression motion be denied.

## BACKGROUND

On July 27, 2018, FBI Special Agents Justin Lowrance and Bryce Fankhauser interviewed Ashley as part of an open investigation Agent Lowrance was following up

---

[1]*See Miranda v. Arizona*, 384 U.S. 430 (1966).

on.  A little over two years earlier, E.A., a 10-year-old girl with autism, disclosed that Ashley had sexual contact with her.[2]  Ashley was 18 years old when the contact supposedly occurred.[3]

The interview took place inside Agent Lowrance's vehicle parked in front of Ashley's Cherry Creek home.  Ashley agreed to talk to Agent Lowrance and walked from the residence to the agent's vehicle and got in.  Agent Lowrance sat down in the front driver's seat next to Ashley and Agent Fankhauser took a seat directly behind Ashley.  After obtaining certain identifying information, Agent Lowrance advised Ashley (1) he was not under arrest or in custody; (2) he was free to leave; (3) his door to the vehicle was unlocked; (4) the agent would leave if asked; (5) the interview was completely voluntary; (6) he did not have to talk to the agent and could stop talking at any time; and (7) he would not be arrested at the end of the interview.  Ashley indicated he understood and proceeded with the interview.  The agents never informed Ashley of his *Miranda* rights.

The three conversed in the vehicle for approximately 45 minutes.  Ashley at first maintained that he could not remember back that far, someone else touched E.A., she made it up, and nothing happened.  Eventually, he admitted to partially penetrating her from behind.  At the conclusion of the interview, Ashley thanked the agents for helping

---

[2]*See* Dkt. No. 28 at 10-12.

[3]*See id.* at 2, 11-12, 14.

him "let that out."[4]  He then asked them to drop him off at a location three miles away, which they did.

Within two months of the interview, a federal grand jury returned an indictment against Ashley charging him with aggravated sexual abuse of a child in Indian country.[5]  Ashley later moved to suppress his statements to Agents Lowrance and Fankhauser on *Miranda* custody grounds.  The Court held an evidentiary hearing, received two exhibits (an audio recording of the interview and transcript of it) into evidence, took judicial notice of Ashley's competency evaluation,[6] and heard testimony from two witnesses (the interviewing agents).

## DISCUSSION

Ashley claims that the statements he made in the vehicle to Agents Lowrance and Fankhauser should be suppressed because he was never advised of his *Miranda* rights.  *Miranda* requires that law enforcement officers provide certain warnings before they conduct an interrogation of a suspect who is in custody.[7]  Ashley contends that he was in custody when the agents questioned him about E.A. and that he should have been Mirandized before they did.

---

[4]Mot. Hrg. Ex. B, lines 23-24 (Oct. 4, 2019).

[5]*See* 18 U.S.C. §§1153, 2241(c), and 2246(2).

[6]*See* Dkt. No. 28.

[7]*See Miranda*, 384 U.S. at 478-79.

Officers need not administer *Miranda* warnings to everyone they question.[8] Instead, "warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'"[9]

"Custody" is a "term of art" that describes circumstances generally thought "to present a serious danger of coercion."[10]  The central issue in the custody determination "is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."[11]  "Two distinct inquiries are essential to this determination:  first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he [ ] was not at liberty to terminate the interrogation and leave."[12]  "[T]he critical [question] is not whether the interview took place in a coercive or police dominated environment, but rather, whether the [suspect's] 'freedom to depart was restricted in any way.'"[13]  When gauging the suspect's freedom of movement, a court must examine "all of the

---

[8]*See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

[9]*Id.*

[10]*Howes v. Fields*, 565 U.S. 499, 508-09 (2012).

[11]*California v. Beheler*, 463 U.S. 1121, 1125 (1983) (*per curiam*) (internal quotation omitted).

[12]*Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (footnote omitted); *see also J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011) (*quoting Thompson* and emphasizing that the custody determination has "two discrete inquiries").

[13]*United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (*en banc*) (*quoting Mathiason*, 429 U.S. at 495), *cert. denied*, 543 U.S. 1145 (2005).

circumstances surrounding the interrogation."[14]  Pertinent facts include being informed that he is or is not under arrest,[15] "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of [him] at the end of the questioning."[16]

An express advisement that the suspect is not under arrest is "the most obvious and effective means" of establishing that custody is lacking.[17]  A suspect who is told that he is free to terminate an interview at will is "powerful evidence" of a non-custodial encounter.[18]  So powerful that no case from the Supreme Court or the Eighth

---

[14]*Howes*, 565 U.S. at 509 (*quoting Stansbury v. California*, 511 U.S. 318, 322, 325 (1994) (*per curiam*)).

[15]*See Mathiason*, 429 U.S. at 495; *United States v. Griffin*, 922 F.2d 1343, 1349-50 (8th Cir. 1990); *see also Beheler*, 463 U.S. at 1122, 1125 (noting that "the police specifically told [the suspect] that he was not under arrest" and this was a factor in the custody adjudication).

[16]*Howes*, 565 U.S. at 509.

[17]*United States v. Williams*, 760 F.3d 811, 814-15 (8th Cir. 2014) (*quoting Griffin*, 922 F.2d at 1349); *see also United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (informing suspect that he is not under arrest and that his participation in questioning is voluntary, is highly probative of whether reasonable person would feel that he may terminate interview and leave), *cert. denied*, 544 U.S. 1060 (2005).

[18]*Giboney*, 863 F.3d 1022, 1027-28 (8th Cir.), *cert. denied*, 138 S.Ct. 527 (2017); *Czichray*, 378 F.3d at 826; *see also United States v. Elzahabi*, 557 F.3d 879, 884 (8th Cir.) ("An explicit assertion that the [suspect] may end the encounter generally removes any custodial trappings from the questioning"), *cert. denied*, 556 U.S. 1288 (2009).

Circuit has held that a suspect was in custody after being advised of his freedom to leave or terminate questioning.[19]

Agent Lowrance informed Ashley he (1) was not under arrest and the interview was voluntary (twice); (2) was able to stop or terminate the interview and leave at any time; and (3) would not be arrested when the interview was over. Ashley never objected to speaking with the agents, stayed with them in the vehicle, and answered their questions.

While Ashley's movement was somewhat limited (because he was in a vehicle), he was not handcuffed or physically restrained or locked in the vehicle. He got in and out of the vehicle two different times and left with his friends at a predetermined location a few miles up the road.

Admittedly, Agents Lowrance and Fankhauser drove to Ashley's residence and initiated contact with him there. But Ashley agreed to talk to them in the vehicle and did so. His colloquy with the agents did not last long (about 45 minutes) and he ultimately thanked them for helping him unveil the E.A. incident.

Ashley was cooperative with Agents Lowrance and Fankhauser, openly respondin to their questions and drawing a diagram for them. Neither agent employed any strong-arm tactics or deceptive stratagems to goad Ashley into making inculpatory

---

[19]*See Giboney*, 863 F.3d at 10228; *see also United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011) (observing the Eighth Circuit has never held that a person was in custody after receiving admonitions that he could leave and did not have to answer questions).

admissions.  And at no time did the agents say or intimate to Ashley that there would be criminal repercussions for his conduct.  In the end, Ashley was not arrested after confessing and was free to do whatever he desired when the agents left.[20]

A couple more points – that are meaningful to this case.  Number one, *Miranda* warnings are not required simply because the questioning takes place in the closed quarters of a law enforcement vehicle.[21]  And number two, some degree of coercion is part and parcel of the interrogation process and the coercive aspects of any police interview is largely irrelevant to the custody determination unless a reasonable person would perceive the coercion as restricting his freedom to depart.[22]

---

[20]*See United States v. Galceran*, 301 F.3d 927, 931 (8th Cir. 2002) (observing that lack of arrest is a "very important factor weighing against custody"); *see also Mathiason*, 429 U.S. at 495 (stressing that after questioning, defendant left "the police station without hindrance").

[21]*See United States v. Plumman*, 409 F.3d 919, 924-25 (8th Cir. 2005); *United States v. Bordeaux*, 400 F.3d 548, 559-60 (8th Cir. 2005); *United States v. Johnson*, 64 F.3d 1120, 1125-26 (8th Cir. 1995), *cert. denied*, 516 U.S. 1139 (1996); *United States v. Boucher*, 909 F.2d 1170, 1173-74 (8th Cir.), *cert. denied*, 498 U.S. 942 (1990); *see also United States v. Jones*, 523 F.3d 1235, 1240-41 (10th Cir. 2006) (no custody, as suspect told, while with agents and in their car, she was not under arrest and free to leave); *State v. Morato*, 2000 S.D. 149, ¶¶5-8, 19-20, 619 N.W.2d 655, 658-59, 661-62 (defendant, within the premises of others, asked to accompany officer to patrol car outside for an interview; no *Miranda* custody, as recording shows officer told defendant he was not under arrest and free to leave).

[22]*See Mathiason*, 424 U.S. at 495; *LeBrun*, 363 F.3d 721; *see also Stansbury*, 511 U.S. at 324-25 (officer's suspicion concerning suspect and purpose for conducting interview bears upon the custody determination "only if the officer's views or beliefs . . . would have affected how a reasonable person in that position would have perceived his [ ] freedom to leave"); *United States v Laurita*, 821 F.3d 1020, 1025-26 (8th Cir. 2016) (use of deception to elicit confession "irrelevant unless it relates to a reasonable person's perception of his freedom to depart").

Ashley's personal characteristics – including whatever his intellectual functioning may have been at the time – did not transform the interrogation into a custodial one. [23]  He was 20 years old when he met with the agents[24] and, based on the recording,[25] did not appear to have any difficulty responding to questions or exhibit any unusual intellectual deficit or mental impairment.[26]

---

[23]*See J.D.B.*, 564 U.S. at 270-71 (whether suspect is in "custody" is objective inquiry that "involves no consideration of the 'actual mindset' of the particular suspect subject to police questioning;" such an inquiry "avoids burdening police with the task of anticipating the idiosyncrasies of every individual suspect and defining how the particular traits affect each suspect's subjective state of mind"); *Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004) (officers are under no duty "to consider . . . contingent psychological factors when deciding when suspects should be advised of their *Miranda* rights"); *Berkemer v. McCarty*, 468 U.S. 420, 423, 439 (1984) (although suspect's inebriation was readily apparent to officers at the scene, Supreme Court's analysis did not advert to this or any other individualized consideration and concluded that traffic stop did not qualify as equivalent of a "formal arrest"); *Beheler*, 463 U.S. at 114-15 (it was "irrelevant" that police knew defendant "had been drinking earlier in the day" and was "emotionally distraught;" he was not in custody under objective reasonable-person standard); *Perrin*, 659 F.3d at 721 (defendant's sub-average intelligence and mental deficits did not establish custody); *United States v. Little*, 18 F.3d 1499, 1505 (8th Cir. 1994) (particular personal traits of defendant are irrelevant to objective "reasonable person" test for police-citizen encounter other than to the extent they may have been known to officer and influenced officer's conduct).

[24]*See* Mot. Hrg. Tr. 22 (Oct. 4, 2019).

[25]*See* Mot. Hrg. Ex. A; *see also* Mot. Hrg. Ex. B (transcript of recording).

[26]*See Perrin*, 659 F.3d at 721; *see also* Mot. Hrg. Tr 21-22, 41-43 (neither Ashley's own statements nor words and clarifiers used during interview were indicative of him being low functioning or mentally retarded); Dkt. No. 28 at 7, 9, 15, 18, 26, 28 (Ashley a high school graduate who, in the evaluator's opinion, did not have an intellectual disability, possessed an adequate level of rational understanding and abilities, and was competent to stand trial); *Galceran*, 301 F.3d at 931 (defendant's claim that he was mentally ill, suicidal and had been hearing voices did not make his interrogation

(continued. . .)

Contrary to what Ashley suggests, Agent Lowrance did not countermand or vitiate the earlier advisements he gave Ashley when the agent said to him, "You got to tell us what happened."[27]  Ashley talked with the agents for as long as he wanted to – continuing to chat with them for another 10 minutes after the interview ended – and departed on his own terms.

The two California Court of Appeals cases Ashley relies on[28] are neither binding nor apposite.  They are distinguishable in many respects and their analysis of the custody issue may not be in accord with the settled law of this circuit.[29]  At any rate,

---

custodial).

[27]*See* Mot. Hrg. Tr. 50-55; *see also United States v. Muhlenbruch*, 634 F.3d 987, 995-97 (8th Cir.) (suspect told he was not under arrest and free to leave at any time and then, after confessing, instructed he would have to remain at police station until officers obtained a search warrant to search his home computer, prompting him to consent to search and seizure of computer; held suspect not in custody under *Miranda*), *cert. denied*, 565 U.S.  873 (2011); *United States v. Black Bear*, 422 F.3d 658, 661-63 (8th Cir. 2005) (whatever coercive aspects of interview defendant faced – by reason of directives he received or otherwise – were largely irrelevant because reasonable person would not have perceived the coercion as restricting his freedom to depart); *see also Jones*, 523 F.3d at 1238, 1244 (suspect informed she was not under arrest, did not have to talk to agent, and was free to leave; no custody even though agent apprised her that it was crime to lie to a federal agent and that he could arrest her); *Morato*, 2000 S.D. 149 ¶¶19-20, 619 N.W.2d at 661-62 (defendant's pre-arrest interview in patrol car – during which he was advised he was free to leave and not under arrest – was noncustodial despite being told his truck would be towed because he was believed to be involved in an assault and truck contained a weapon).

[28]*See People v. Torres*, 25 Cal. App.5th, 162, 235 Cal. Rptr.3d 478 (2018); *People v. Saldana*, 19 Cal. App. 5th 432, 228 Cal Rptr.3d 1 (2018).

[29]*See Laurita*, 821 F.3d at 1025-26; *Williams*, 760 F.3d at 814-15; *United States v. Sanchez*, 676 F.3d 627, 631-32 (8th Cir. 2012); *United States v. Boslau*, 632 F.3d 424, 428-29

(continued. . .)

both of them are not analogous enough to be considered precedential and require suppression of Ashley's statements.

Taking into account and weighing the totality of the circumstances, a reasonable person in Ashley's shoes would not have understood he was in custody while speaking to Agents Lowrance and Fankhauser. The agents thus did not have to warn Ashley of his *Miranda* rights before interviewing him.[30]

## CONCLUSION

The pair of agents did not cross the legal line when they interviewed Ashley with no Miranda advisement. He was not in custody when he spoke with them (and answered their questions) in a vehicle parked outside his home. The agents were not, therefore, obliged to inform Ashley of his privilege against self-incrimination and right to the assistance and presence of counsel.

## RECOMMENDATION

For the reasons, and based on the authorities discussed and cited in this report, it is hereby

RECOMMENDED that Ashley's Motion to Suppress[31] be denied in its entirety.

---

(8th Cir. 2011); *Czichray*, 378 F.3d at 826.

[30]*See Giboney*, 863 F.3d at 1027-29; *Laurita*, 821 F.3d at 1023-28; *Sanchez*, 676 F.3d at 631-32; *United States v. Lowen*, 647 F.3d 863, 866-68 (8th Cir. 2011); *Plumman*, 409 F.3d at 924-25; *Bordeaux*, 400 F.3d at 559-60; *Czichray*, 378 F.3d at 826-30.

[31]*See* Dkt. No. 39.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[32] Unless an extension of time for cause is later obtained,[33] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[34]  Objections must "identify[] those issues on which further review is desired[.]"[35]

DATED this 16th day of October, 2019, at Pierre, South Dakota.

BY THE COURT:

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[32]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[33]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[34]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[35]*Arn*, 474 U.S. at 155.