UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANGELO ASHLEY,<br><br>Defendant. | 3:18-CR-30113-RAL<br><br><br>**OPINION AND ORDER DENYING MOTION TO SUPPRESS AND ADOPTING REPORT AND RECOMMENDATION** |

Defendant Angelo Ashley made statements to law enforcement officers during an informal interview initiated by the officers and conducted in a law enforcement vehicle outside of Ashley's residence. Ashley moved to suppress statements he made during that interview, claiming that he was "in custody" during the interrogation and thus should have been given warnings regarding his Fifth Amendment rights as required by Miranda v. Arizona, 384 U.S. 436 (1966). The Government opposed this motion, acknowledging that Ashley was not read Miranda warnings but arguing that such warnings were not required because Ashley was not in custody when he made the statements.

Magistrate Judge Mark A. Moreno held a suppression hearing on October 4, 2019, and filed a report and recommendation on October 16, 2019, recommending that Ashley's motion to suppress be denied in its entirety. Doc. 51. Ashley filed objections to the report and recommendation, challenging some of Magistrate Judge Moreno's factual findings and omissions and renewing the argument that Ashley was in custody and was not given the requisite Miranda warnings during the interrogation. Doc. 56.

1

This Court reviews objections to a report and recommendation de novo. 28 U.S.C. § 636(b)(1). "In the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" Anderson v. Evangelical Lutheran Good Samaritan Soc'y, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). This Court has conducted a de novo review of those portions of the report and recommendations to which Ashley objects and adopts the report and recommendation.

I.     **Factual Background**

On July 27, 2018, FBI special agents Justin Lowrance and Bryce Fankhauser went to a home in Cherry Creek, South Dakota, where they believed Angelo Ashley lived. Mot. Hr'g Tr. at 9:2, 17. Agent Lowrance made contact with Ashley at the home and asked if Ashley would talk with him in the agent's government-issued vehicle. Mot. Hr'g Tr. at 9:19–23. Ashley agreed, and the pair walked from the home to the vehicle. Mot. Hr'g Tr. at 29:14–24. When they reached the vehicle, Agent Lowrance sat in the driver's seat, Ashley in the front passenger's seat, and Agent Fankhauser, who had been in the front passenger seat, moved to the back seat. Mot. Hr'g Tr. at 10:4–10, 35:6–9. While in the vehicle, Ashley was not restrained in any way, and the agents told him that he was not under arrest, the interview was voluntary, he was free to leave at any time, the door was unlocked, and the agents would leave if he requested. Mot. Hr'g Tr. at 10:18–11:1; Ex. B at 3:17–22. Agent Lowrance also advised Ashley that he could stop talking to the agents at any time and that he would not be arrested at the end of the interview. Ex. B at 3:24–4:2. Neither agent advised Ashley of his Miranda rights. Mot. Hr'g Tr. at 11:2–3; 35:18–20.

During the course of the interview, the agents questioned Ashley about an alleged incident of sexual contact with a minor, which had occurred two years prior. Ex. B at 15:2-10. Ashley

initially said he could not remember that far back, then recounted that he had been accused by the alleged victim's father shortly after the alleged incident. Ex. B at 15:11–13; 17:1–24. Ashley then suggested that the victim made the incident up or that she was possibly touched by somebody else. Ex. B at 18:21–19:19; 21:9–11. An agent told Ashley that the victim gave a full, detailed interview, and encouraged Ashley to tell his side of the story. Ex. B at 26:9–13. In reality, the agent actually understood the victim's statement to be quite vague. Mot. Hr'g Tr. 45:18–47:8. The agent indicated to Ashley that if he had just gotten "caught up in the moment and did something [he] regret[ted]," it would be taken into consideration as opposed to if he was a "hardcore rapist" who did this all the time. Ex. B at 26:15–27:2. After Ashley vaguely acknowledged that something sexual had happened between him and the minor victim on the date of the alleged incident, one of the agents told Ashley, "you got to tell us what happened." Ex. B at 28:16–17. Upon deeper questioning, Ashley stated that he regretted the incident and admitted to having sexual contact with the minor victim, who was only ten years old at the time of the incident, by penetrating her anus with his penis. Doc. 28 at 11; Ex. B at 27:3–32:3. Throughout the interview the agents encouraged Ashley to tell them about the incident by stating he would feel better if he told them what happened on the day of the alleged incident. Ex. B. at 22:18–23; 28:1–2; 29:4–6. At the end of the interview, Ashley thanked the agents for "helping [him] let that out." Ex. B at 39:24. Ashley was not placed under arrest at the conclusion of the interview. Mot. Hr'g Tr. at 13:9–10.

At one point during the interview, the agents and Ashley became aware of a group of people nearby. Mot. Hr'g Tr. at 22:18–23:4. Ashley told the agents that those individuals were there to pick him up. Ex. B at 17:25–18:1. An agent responded by stating that "[t]his will only take a few

3

more minutes," and offered, "[y]ou want to tell these guys it will be just a few minutes? You can hop out if you want." Ex. B at 18:4–5; 18:15–16.

After the interview, Ashley asked the agents to give him a ride to meet up with some people where they were going to ride horses. Mot. Hr'g Tr. at 38:16–21; Ex. B at 40:6–7. The agents agreed to give him a ride and drove him to the location that he indicated. Mot. Hr'g Tr. at 11:18–21.

**II.    Discussion**

In order to protect individuals' Fifth Amendment right against self-incrimination, law enforcement personnel must provide certain warnings to individuals subjected to custodial interrogation. Miranda, 384 U.S. at 478–79. However, they are not required to give warnings to everyone they question, only those who are "in custody." Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam). People are considered "in custody" for purposes of triggering Miranda warnings if they are formally arrested or if their freedom of movement is restrained to a degree associated with formal arrest. Thompson v. Keohane, 516 U.S. 99, 112 (1995) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). Whether a person is "in custody" is an objective inquiry and requires the court to consider the circumstances surrounding an interrogation and whether under those circumstances a reasonable person would feel free to terminate the encounter and leave. Id.

The Eighth Circuit has identified six nonexclusive factors for courts to consider when assessing whether a person is "in custody." United States v. Laurita, 821 F.3d 1020, 1024 (8th Cir. 2016). They include

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained

4

> freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and], (6) whether the suspect was placed under arrest at the termination of the questioning.

Id. (alteration in original) (quoting United States v. Griffin, 922 F.2d 1343, 1349 (1990)). "No single consideration is dispositive[.]" United States v. Ollie, 442 F.3d 1135, 1137 (8th Cir. 2006). However, informing the suspect that his participation is voluntary, that he is not under arrest, and that he may end the interview at any time are effective ways of signifying that the suspect is not in custody. United States v. Elzahabi, 557 F.3d 879, 883 (8th Cir. 2009); Ollie, 442 F.3d at 1138.

Here, the agents told Ashley at the outset of the interview that his participation was voluntary, that he was not under arrest or in custody, that he could leave at any time, that the door was unlocked, that the agents would leave if he asked them to, and that he would not be arrested at the end of the interview. These statements informed Ashley of his noncustodial status and his rights relative thereto. Ashley chose to stay in the vehicle and speak with the agents. The facts as applied to the first factor suggest Ashley was not in custody.

Although the interview took place within the confines of a government-issued vehicle, Ashley's freedom of movement was not unduly restricted. He was seated in the front passenger seat of the vehicle, was not handcuffed, and was told the door was unlocked in case he would like to leave. There is no evidence in the record that his ability to access the door was blocked in any way. In fact, Agent Lowrance informed Ashley at one point that he could hop out of the vehicle to speak with a group of people there to pick him up. This suggests that Ashley still possessed his unrestrained freedom of movement and weighs in favor of a finding that he was not in custody.

Agents Lowrance and Fankhauser initiated contact with Ashley by driving to his home, but Ashley voluntarily acquiesced to speaking with them in Agent Lowrance's government vehicle. Ashley now asserts that the voluntariness of his participation changed during the course of the interview. He claims that when one agent told Ashley that he could tell the individuals who were there to pick him up that the interview will only last a few minutes longer and when an agent told Ashley that he had to tell them what happened, that an ordinary person would no longer feel free to leave under those circumstances. However, these interactions do not objectively affect the voluntariness of the interview. With regard to the first statement, Agent Lowrance told Ashley "[y]ou want to tell these guys it will be just a few minutes? You can hop out if you want." This statement suggests that Ashley still possessed the choice about whether to voluntarily proceed with the interview or not. Even if Agent Lowrance subjectively intended Ashley to dismiss the group and continue the interview, a reasonable person in Ashley's situation would understand, especially considering the agents' statements at the beginning of the interview, that he was still voluntarily participating and was free to end the encounter. The second statement by an agent similarly does not make Ashley's participation in the interview involuntary. In response to Ashley's question, "isn't it good enough I admitted it?" one of the agents replied, "[w]ell, you got to tell us what happened." This statement is less the directive that Ashley now makes it out to be than it is a response to his question. The agent's response did not have the effect of transforming the interview of Ashley into a custodial one. A reasonable person under similar circumstances would still understand that his participation continued to be voluntary.

Although Magistrate Judge Moreno found that the agents did not employ strong arm tactics or deceptive stratagems, Ashley argues that the agents employed deceptive stratagems by mischaracterizing the victim's statement, blame shifting, and minimizing the seriousness of the

offense. The use of deceptive stratagems can be seen as a coercive factor suggesting one is in custody. Laurita, 821 F.3d at 1024. However, "the coercive aspects of a police interview are largely irrelevant to the custody determination except where a reasonable person would perceive the coercion as restricting his [] freedom to depart." Ollie, 442 F.3d at 1138–39 (quoting United States v. LeBrun, 363 F.3d 715, 721 (8th Cir. 2004) (en banc)). The type of deception used in this case would not communicate to a reasonable person that he is no longer free to leave, and therefore does not alter this Court's determination that Ashley was not in custody when interviewed.

It is true that the questioning was initiated and directed by law enforcement and took place within a government vehicle, but that does not mean that there was necessarily a police dominated atmosphere. "In determining whether an interview was police dominated, we consider 'the entire context of the questioning, including such considerations as place and length of the interrogation.'" Laurita, 821 F.3d at 1026 (quoting Griffin, 922 F.2d at 1352). Although the questioning took place in a law enforcement vehicle, it was parked in front of Ashley's home and his door was unlocked. Ashley remained free and able to leave the vehicle at any time and return to his home. Furthermore, the interview lasted for a relatively short period of time. Given this context, the interaction was not so police dominated as to render it custodial.

Finally, with regard to the last factor, Ashley was not placed under arrest after the interview. Rather, he asked the agents for the favor of a ride to where he was going to meet friends, and they agreed. The fact that Ashley was not arrested after the interview suggests that he was not in custody while being questioned by the agents.

Ashley cites two California state court cases that contain some factual similarities to the instant case, but they are unpersuasive and distinguishable. Both People v. Torres, 235 Cal. Rptr. 3d 478 (Cal. Ct. App. 2018), and People v. Saldana, 228 Cal Rprt. 3d 1 (Cal. Ct. App. 2018),

recognize that an interrogation may begin noncustodial, but nonetheless become custodial during the course of the interview. This may be true. However, both of those cases involve factual dissimilarities from Ashley's interview which never became custodial. Furthermore, the California Court of Appeals applies different factors to its custody determination than those articulated by the Eighth Circuit.

After looking at all of the facts and circumstances surrounding this case, Ashley's interview with Agent Lowrance and Agent Fankhauser never became custodial and a reasonable person in Ashley's position would have always considered himself free to leave from the interview. Therefore, Ashley was not entitled to <u>Miranda</u> warnings and his motion to suppress his statements made during that interview on that basis is denied.

### III. Conclusion

For good cause, it is hereby

ORDERED that the Report and Recommendation, Doc. 51, is adopted. It is further

ORDERED that Ashley's Motion to Suppress Statements, Doc. 39, is denied.

DATED this 9th day of December, 2019.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE